Nov. Term,
1832.

HAMILTON
v.
WORT.

---

## HAMILTON v. WORT.

An award is not, under the statute, conclusive as to the law or the facts of the case.

A party has a right to prove in the Circuit Court, as an objection to an award, any misconduct of the arbitrators or of the opposite party; or to show, by introducing the evidence which was before the arbitrators, that they have mistaken the merits of the cause.

*Monday,
November 26.*

ERROR to the *Jackson* Circuit Court.

BLACKFORD, J.—*Samuel Wort* and *Thomas Hamilton,* the parties in this cause, entered into bonds dated the 17th of *November,* 1829, submitting a certain matter in difference between them to arbitration; and the arbitrators made an award in favour of *Wort.*

The arbitration-bond executed by *Hamilton,* and the award of the arbitrators, were returned to the Circuit Court; and a rule was obtained by *Wort,* at the *September* term, 1830, calling upon *Hamilton* to show cause why the award should not be made the judgment of the Court. *Hamilton* appeared, and in answer to the rule pleaded, in substance, that the arbitrators in making

their award had mistaken both the law and the facts of the case; which he was ready to verify. This plea was demurred to by *Wort.* The Circuit Court sustained the demurrer, and made the award the judgment of the Court.

*Hamilton* contends that he had a right to impeach the award, by proving that the arbitrators had not correctly determined the merits of the controversy.

The decision of this case depends upon the construction to be given to our statute relative to arbitrations. This act differs materially from that of *William* the 3d on the same subject. The *English* statute, after making the party who refuses to perform an award, liable to process for a contempt of Court, says—"which process shall not be stopped or delayed in its execution, by any order, rule, command, or process of any other Court, either of law or equity, unless it shall be made appear on oath to such Court, that the arbitrators or umpire misbehaved themselves, and that such award, arbitration, or umpirage was procured by corruption or other undue means." It also provides, that the Court making the rule for submission, may set aside the award if it has been "procured by corruption or undue means," provided the corruption or undue practice be complained of before the last day of the next term after the award is made. 2 Tidd's Practice, p. 733, 751. To set aside an award under this act, it has been often decided that the party must show some illegality appearing on the face of the award, or some irregularity, as want of notice of the meeting, or collusion or gross misbehaviour of the arbitrators. But the Court will never, on motion, enter at large into the merits of the cause. 2 Tidd's Prac. p. 750.

Our statute on the subject of setting aside awards was, originally, the same in substance with the *English* law. The first act relative to arbitrations in this country was passed in 1799, at the first session of the general assembly of the *North-Western Territory.* This act, after subjecting the party in default to process for contempt, reads as follows: "which process shall not be stayed or impeded by order of any other Court of law or equity, or by the Court from whence it issued, until the parties shall in all things obey the award or umpirage, unless it shall be made to appear on oath, that the umpire or arbitrators misbehaved, and that such award or umpirage was obtained by fraud, corruption, or other undue means; and no testimony shall be

received to impeach or invalidate the said award or umpirage, after the second day of the term next after the term in which the submission was made a rule of Court." Acts of the *North-Western Territory* in 1799, page 46. This statute was re-enacted without any alteration in 1807, by the legislature of the *Indiana Territory*; Rev. Code of 1807, page 175; and it continued to be the law here until the legislature, in 1811, thought proper to change it. From 1799, therefore, until 1811, the law of this country as to impeaching awards was substantially the same with the *English* statute of *William* the 3d; and they could not be set aside during that period, unless they had been obtained by corruption or other undue means. The award, showing no illegality on its face, was conclusive as to the merits of the cause. But the act of 1811 made a very material alteration in the law on arbitrations. The statute of that year enacts—that after the award is returned, there shall be a rule against the losing party to show cause why the award should not be made the judgment of the Court. And it also enacts—"that the party showing cause why the award or umpirage should not be made the judgment of the Court, *shall be at liberty to produce before the Court any evidence he can, to show that the said award or umpirage was obtained by mistake, either in matter of law or fact; or that the same was obtained by corrupt or other undue means; and in either case the said award or umpirage shall be annulled and set aside, at the costs of the party prosecuting the same.*" Besides these new provisions in the statute of 1811, there is inserted in it one entire new section, which makes it the duty of the Court, when an award or umpirage is returned, "to hear any evidence either party may offer, whether to invalidate or support the same, and to set aside or enter judgment on the award or umpirage, as to said Court may seem just." Acts of 1811, p. 90.

These new enactments of the legislature, placed the law of arbitration on a very different footing from what it was before. They added an entire new ground of objection to the validity of awards, unknown to the previous law of this country or of *England*. They expressly permit the party objecting to an award, to introduce evidence to prove that the arbitrators have not determined the merits of the cause correctly, but have made a mistake in the law or the facts of the case. These new statutory provisions were re-enacted verbatim in the revision of

the statutes in 1818; in 1824; and in 1831. They must govern our decision in the present cause.

It is impossible for a party objecting to an award unexceptionable on its face, to have the benefit of those clauses of our statute to which we have referred, unless he be permitted to exhibit to the Court the testimony that was adduced before the arbitrators. There is no other way by which the Court can be enabled to determine, whether the arbitrators have mistaken any of the questions of fact or of law belonging to the cause. By our statute as it now stands, and has stood since 1811, the merits of an award on a rule to make it a judgment, like the merits of a verdict on a motion for a new trial, must be inquired into by the Court. In the case of a verdict, the Court having heard the evidence, require no further examination of it. But in the case of an award it is otherwise. The Court have had no opportunity to know what was the evidence before the arbitrators. It appears to us, therefore, that the party objecting to an award for mistakes in matter of fact or law, not shown by the award itself, must be permitted to produce before the Court the testimony upon which the award is founded. The award, made by judges of the parties' own choosing, is entitled to great respect; but it is not, under our statute, conclusive as to the law or the facts. It may be considered as standing on ground similar to that on which a verdict stands. If the party complaining of an award can prove any misconduct on the part of the arbitrators, or of the opposite party; or if he can show, by introducing the evidence that was before the arbitrators, that they have mistaken the merits of the cause, the Court may refuse to permit the award to become a judgment.

In the case before us, *Hamilton* was ruled to show cause why the award against him should not be made a judgment of the Court. He showed cause against the rule, by pleading that the arbitrators had mistaken the law and facts of the case, which he offered to prove. The Court considered such mistakes, assuming them to exist, to constitute no legal objection to the award; and therefore refused to hear the evidence. This decision of the Circuit Court is in opposition to the express provisions of the statute, and cannot be supported.

The rule to show cause, in this case, like a rule to show cause why a new trial should not be granted, or a judgment arrested, required no special pleading. We have not, therefore,

Nov. Term, 1832.

THE STATE
v.
FLINN.

considered it necessary to examine the objections to the form of the defendant's statement in answer to the rule against him. It is enough for us to know, that the defendant offered to prove, in opposition to the rule, that the arbitrators had mistaken the merits of the controversy; and that the Circuit Court refused to hear the evidence. The judgment is erroneous and must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*J. Sullivan* and *I. Howk*, for the plaintiff.

*A. C. Griffith*, for the defendant.